Kass Harstad (Bar No. 11012)
Erik Strindberg (Bar No. 4158)
Brian D. Tuttle (Bar No. 16974)
**STRINDBERG & SCHOLNICK, LLC**
675 East 2100 South, Suite 350
Salt Lake City, Utah 84106
(t) 801.359.4169
(f) 801.359.4313
Email: kass@utahjobjustice.com
        erik@utahjobjustice.com
        brian@utahjobjustice.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **MARYLEEN TAHY,**<br><br>        Plaintiff,<br><br>vs.<br><br>**SAN JUAN SCHOOL DISTRICT**,<br><br>        Defendant. | Civil No.   4:19 cv 00004<br><br>**COMPLAINT**<br>**(Jury Demand)**<br><br>Judge Nuffer |

Plaintiff Maryleen Tahy ("Ms. Tahy" or "Plaintiff"), by and through her attorneys, hereby complains against Defendant San Juan School District (the "District" or "Defendant") as follows:

## NATURE OF CLAIMS

1.      This is an action against the District seeking redress for: 1) wrongful termination in violation of Public Education Human Resource Management Act ("PEHRMA") Utah Code §53A-8a-101, *et seq.*, and the Utah Orderly School Termination Procedure Act, Utah Code §53A-2-101, *et seq.*; 2) breach of contract; 3) deprivation of property interest without due process in violation of the United States Constitution; and 4) racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. §1981.

## PARTIES

2.      Ms. Tahy is an individual residing in the city of Blanding, State of Utah. At all times relevant to this case, she was an employee of the District.

3.      Defendant District is a political subdivision of the State of Utah. During all relevant times in this Complaint, the District had and continues to have 15 or more employees, and as such, it is an "employer" with the meaning of § 701(b) of Title VII.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because Ms. Tahy has brought claims for violations of federal law.

5.      Venue is proper with this Court pursuant to 28 U.S.C. § 1391(b), because all of the employment practices alleged to be unlawful were committed within the jurisdiction of this Court.

6.      On or about June 8, 2017, Ms. Tahy filed a Charge of Discrimination with the Utah Anti-Discrimination and Labor Division ("UALD") and the United States Equal Opportunity Commission ("EEOC"), alleging discrimination based on the basis of race, sex, retaliation, age, and disability.

7.      The EEOC issued Ms. Tahy a Notice of Right to Sue on October 30, 2018, and this Complaint is being filed with ninety (90) days.

## GENERAL ALLEGATIONS

### Ms. Tahy's Background

8.      Ms. Tahy is a Native American (Navajo) woman who is an experienced and successful licensed educator.

9.      Ms. Tahy earned a Bachelor's of Science degree in Elementary Education from Brigham Young University in 1981.

10.     In the late 1970's, Ms. Tahy worked as a teacher aide for four years at the District until she became a licensed public educator in the 1981-82 school year. There, she received high marks from the Superintendent, such as always being "well prepared," "professional," "relat[ing] positively with both the Anglo and Navajo children," and many other high commendations.

11.     Ms. Tahy also worked as a substitute teacher at the District from 2002-2011 at Blanding Elementary School ("Blanding Elementary"), Albert R. Lyman Middle School, and San Juan High School.

3

12.    In 2012, Ms. Tahy worked as a substitute teacher for the Heritage Language teacher at Blanding Elementary.

13.    While working as a substitute teacher, Ms. Tahy began preparing to become a full-time Navajo Language teacher.

14.    Ms. Tahy subsequently earned four different certificates that taught her applicable teaching skills, such as teaching Navajo culture and language to children and learning the origins of the Navajo nation.

### District Policies

15.    The Johnson-O'Malley Program ("JOM") is a federal program that authorizes federal contracts with school districts to financially assist districts with the educational needs of eligible Native American students. JOM programs are supplemental to the regular school programs and operations, and in San Juan School District, the JOM programs focus on Native American language arts and culture.

16.    San Juan School District is recipient of JOM federal funds, and it allocates the JOM funding between the different schools in the District. At all times relevant to the Complaint, Blanding Elementary was allocated a portion of the District's JOM funding.

17.    Additionally, in 1975 and again in 1997, San Juan School District entered into a judicially-enforced consent decree with the District's minors and parents/guardians of the Navajo tribe, whereby the District was supposed to: develop and implement a bilingual (Navajo and English) plan and a cultural awareness plan; and use its best efforts

4

to hire, provide training to and retain teachers certified and/or trained in bilingual education.

18.     Under San Juan School District Policy 4114, the District has a "longstanding policy of preferring Native Americans in all District programs operated under Federal contracts . . . for the benefit of Native American students within the District." The policy also states:

> In hiring licensed teachers . . . who will be involved primarily in the education of Native American children, the District shall give preference to qualified Native Americans, particularly Navajos who speak Navajo, living on or near the reservation . . .. In programs for the benefit of Native Americans in the District, the District shall, to the greatest extent feasible, give preference to qualified Native Americans in employment and training.

## Ms. Tahy's Employment at Blanding Elementary

19.     In 2013, the Navajo Nation recommended that the District hire Ms. Tahy as a Level 1 Navajo Language & Culture Certificate, with a 30/30 score for Navajo Language Component Language Proficiency Ability.

20.     The District then hired Ms. Tahy on or about August 13, 2013, as a provisional Navajo Heritage Language/JOM teacher at Blanding Elementary.

21.     Ms. Tahy was the only Native American employed at the school, and upon information and belief, most or all of her salary was paid for through federal JOM funds.

22.     Ms. Tahy's primary duties as a Navajo Heritage Language teacher were to teach the students the Navajo language, supplemented with Navajo culture. She also was

5

in charge of planning the annual Native American Heritage week in the fall of each school year.

23.     After Ms. Tahy started at Blanding Elementary in the Fall of 2013, the principal, Mark Burge ("Mr. Burge"), began to exhibit discriminatory animus against Ms. Tahy and the JOM programs/classes that Ms. Tahy taught.

24.     For instance, under Utah Code, Mr. Burge had a legal obligation to assign a mentor to Ms. Tahy (a provisional teacher), to help her become effective and competent in the teaching profession. *See* Utah Code §53A-8a-408 (2012).

25.     Despite his legal obligation to do so, Mr. Burge never assigned Ms. Tahy a mentor.

26.     Additionally, in the fall of 2013, Ms. Tahy began preparing for Native American Heritage week, and arranged for a number of Native American presenters to come to the school to give presentations on various aspects of their culture.

27.     However, soon thereafter, Mr. Burge stripped responsibility for planning the Native American Heritage week from Ms. Tahy and planned the event himself. Mr. Burge arranged for white presenters to give presentations instead of hiring the Native Americans presenters selected by Ms. Tahy.

28.     Additionally, as part of her job, Ms. Tahy taught music to her Native American students, and had her students perform school-wide Navajo or Native American presentations or concerts.

29.     Mr. Burge allowed the white General Education ("GenEd") music teacher to pull students out of their other classes to prepare for and perform school-wide music concerts. However, he never allowed Ms. Tahy to pull her Native American students out of their other classes to prepare for or perform school-wide Native American presentations or concerts.

30.     The District provides, or is supposed to provide, Navajo Heritage Language/JOM teachers with extra prep time during the school day, due to the large quantity of students they teach. Indeed, Ms. Tahy taught over 150 students per day.

31.     The Navajo Heritage Language/JOM teachers are supposed to use this extra time to prepare for their own classes; they are not supposed to use this prep time to do other work for the school.

32.     Between 2014 and her termination, Mr. Burge repeatedly tried to force Ms. Tahy to use her prep time to help tutor GenEd students with reading.

33.     In 2014, Clayton Long (the District's Bilingual Director and the supervisor of the JOM/Heritage Language teachers) informed Mr. Burge that Ms. Tahy was supposed to use the extra prep time to prepare for her own classes and was not supposed to use her prep time to do other work for the school.

34.     Despite this, when Ms. Tahy told Mr. Burge that that she could not use her extra prep time to tutor GenEd students with reading, Mr. Burge accused her of not being a team player.

35.     In or around March 2015, Ms. Tahy reported Mr. Burge's racial discrimination to Lynette Johnson (Mr. Long's supervisor and the Director of Student Services). Ms. Tahy also told Ms. Johnson about Mr. Burge's efforts to undermine the JOM/Navajo Heritage Language program.

36.     Ms. Tahy's discrimination complaint went ignored and Mr. Burge continued to discriminate against Ms. Tahy and devalue the program. Indeed, after Ms. Tahy reported the discrimination, Mr. Burge's conduct became worse.

37.     Ms. Tahy suffers from Vitiligo, a skin disorder that creates causes a loss of skin color in blotches, turning the skin white where the blotches are located.

38.     In the fall of 2015, when Mr. Burge and Ms. Tahy were discussing her condition, Mr. Burge said to her, "What are you trying to do, become a white man?"

39.     Additionally, in or around October 2015, Mr. Burge refused to provide Ms. Tahy with any funding for Native American Heritage week, even though the funding had already been approved by Mr. Long and the JOM funding that Blanding Elementary receives is supposed to go towards cultural events like the Heritage Week.

40.     At this same time, Mr. Burge used some of the school's JOM funding to purchase general school supplies for Blanding Elementary.

## The District Violates the Public Education Human Resource Management Act ("PEHRMA") and Denies Ms. Tahy Due Process

41.     Under Utah code, a provisional teacher obtains career status after three consecutive years of full-time employment with a school district. However, a district may

extend the provisional status of an employee up to an additional two consecutive years, so long as the district has a written policy that specifies the circumstances under which the employee's provisional status may be extended. *See* Utah Code §53A-8a-201 (2012).

42.     In the summer of 2016, Ms. Tahy completed her third consecutive year of provisional, full-time employment with the District.

43.     However, no one from the District approached Ms. Tahy about acquiring career status or discussed the circumstances under which her provisional status would be extended.

44.     In September 2016, Ms. Tahy began her fourth consecutive year as a provisional, full-time teacher.

45.     Under Utah code, evaluations must be based on multiple lines of evidence, including: self-evaluation; student and parent input; evidence of professional growth and other instructor improvements; and student academic growth. *See* Utah Code §53A-8a-405 (2014).

46.     Ms. Tahy received excellent reviews from both parents and students. Indeed, in a questionnaire given to parents regarding Ms. Tahy's teaching, the parents only gave positive reviews, and many parents indicated that they appreciated how much Navajo language Ms. Tahy taught their child.

47.     From the students' questionnaires, the students commented how they loved Ms. Tahy's class.

48.     Despite this, Mr. Burge did not consider parent and student input when evaluating Ms. Tahy.

49.     Between the Fall of 2013 (when Ms. Tahy was first hired as a provisional teacher) and Spring 2017 (when the District terminated Ms. Tahy), Mr. Burge evaluated Ms. Tahy four times. Each year, he evaluated her as Emerging or Minimally Effective.

50.     Under Utah code at the time, if an educator's performance needed improvement, the person administering the educator's evaluation was supposed to give to the educator a written document identifying: (a) specific, measurable and actionable deficiencies; (b) resources that would be provided for improvement; and (c) a recommended course of action designed to improve the educator's performance. *See* Utah Code §53A-8a-407 (2012).

51.     Mr. Burge failed to comply with Utah Code §53A-8a-407 (2012). Specifically:

        a.   Mr. Burge's feedback was generally immeasurable and subjective – he would instruct Ms. Tahy to allow the students to be more engaged or would suggest to Ms. Tahy that she think of different ways to teach the children songs;

        b.   The evaluations by Mr. Burge did not provide any means or resources for Ms. Tahy to help her improve any deficiencies that he indicated (and indeed, a mentor certainly would have been helpful); and

10

    c.  Although Mr. Burge rated Ms. Tahy as Emerging or Minimally Effective four years in a row, Mr. Burge never outlined a course of action on how Ms. Tahy could improve her performance, nor did he meet with her to track her progression.

52.    Additionally, Ms. Tahy received good reviews from the Monitoring Team following the Navajo Sheltered Instruction Observation Protocol ("NSIOP") for Heritage Language/JOM teachers. For example, in April 2016, Ms. Tahy scored an average of 3.65 out of 4.0 in the NSIOP evaluation, and in October 2016, Ms. Tahy averaged a 3.6 out of 4.0.

53.    In or around January 16, 2017, just a few months after her good NSIOP evaluation, Ms. Tahy received a poor mid-year evaluation from Mr. Burge.

54.    In February 2017, Mr. Burge sent a memo to the five provisional teachers at Blanding Elementary (including Ms. Tahy), stating that he wanted to observe their classrooms three times a week to evaluate their teaching.

55.    Thereafter, Mr. Burge observed Ms. Tahy three times in one week.

56.    Mr. Burge did not observe the other provisional teachers three times in one week. To the contrary, he observed the other provisional teachers one time per week or not at all.

57.    Notably, Ms. Tahy was the only Native American provisional teacher. The four other provisional teachers were white.

58.    On February 24, 2017, Mr. Burge and Ron Nielson (the Director over the District's elementary schools) met with Ms. Tahy.

59.    In this meeting, Ron Nielson and Mr. Burge informed Ms. Tahy that they would not be renewing her contract for the following year, principally based on Mr. Burge's evaluations of Ms. Tahy.

60.    Mr. Burge and Mr. Nielson informed Ms. Tahy that she had until March 1, 2017, to resign or retire.

61.    On February 27, 2017, Ms. Tahy met with Matt Keyes, the District's Director of Human Resources. Ms. Tahy informed Mr. Keyes that she believed that the District was forcing her to retire and terminating her for discriminatory reasons.

62.    A few days later, Ms. Tahy provided Mr. Keyes a report summarizing her concerns.

63.    Three weeks later, Ms. Tahy still had not received a response from the District regarding her reports of discrimination. As such, on March 22, 2017, Ms. Tahy filed a formal grievance outlining both her discrimination charges and how the District failed to comply with its own policies in attempt to force her to either resign or retire.

64.    On March 24, 2017, Mr. Keyes drafted a memo to Edward Lyman, the District's Superintendent at the time, regarding Ms. Tahy's grievance.

65.     In the March 24th memo, Mr. Keyes opined that Ms. Tahy was a

"provisional" teacher, pursuant to San Juan School District Policy 4130 *District Contract*

*Employment*.

66.     Under District Policy 4130, provisional educators may be considered for

career status after three consecutive years of full-time employment. However,

"[p]rovisional employees must be recommended for career employee status by their

supervisor and by their supervisor's supervisor." The Policy specifies that

> During a provisional educator's third year of service, the educator's
> supervisor may initiate the process to recommend career educator status. If
> the provisional educator receives all of the necessary recommendations, the
> educator may be awarded career status. If the educator does not receive all
> of the necessary recommendations, the educator's supervisor shall either
> recommend non-renewal or a fourth provisional year of service.

67.     In his March 24th Memo to Mr. Lyman, Mr. Keyes also indicated that Ms.

Tahy's provisional status complied with Utah Code §53A-8a-201. However, that

assertion is false.

68.     Specifically, under District Policy 4130, a supervisor (such as Mr. Burge)

may simply choose not to initiate career status after a provisional teacher's third year of

service, thereby extending the teacher's provisional status with no explanation

whatsoever. However, Utah Code §53A-8a-201 allows a district to extend a teacher's

provisional status only if it has a written policy that "specifies the circumstances" that can

lead to an extension of provisional status. *See* Utah Code §53A-8a-201 (2012).

69.     Here, Mr. Burge chose not to initiate career status during or after Ms. Tahy's third year of service, and her provisional status was extended with no explanation. In other words, although the extension of Ms. Tahy's provisional status may have complied with District Policy 4130, it violated Utah Code §53A-8a-201 (2012).

70.     As a result of the District's violation of Utah Code, Ms. Tahy was denied the benefit of becoming a career educator (or at least knowing what deficiencies caused her provisional status to be extended), and was deprived of her due process rights and job security.

71.     In or around April 10, 2017, Mr. Lyman reiterated to Ms. Tahy that she had remained a "provisional" teacher even after four years of teaching. As such, the District was not required to give her a reason for termination or provide her with due process.

72.     Thereafter, on or around April 21, 2017, Ms. Tahy made a formal written request for a grievance hearing before the School Board. The District denied Ms. Tahy's request.

## FIRST CAUSE OF ACTION
### Violation of the Orderly School Termination Procedures and the Public Education Human Resources Management Act

73.     Plaintiff reasserts and incorporates by reference all preceding paragraphs as if fully set forth herein.

74.     The District violated PEHRMA and Utah's Orderly School Termination Procedures Act § 53A-8a-501, by doing the following:

14

a. The District failed to provide Ms. Tahy with a mentor when she was a provisional teacher, in violation of Utah Code §53A-8a-408 (2012);

b. The District failed to use multiple lines of evidence (such as parent and student input) when evaluating Ms. Tahy, in violation of Utah Code §53A-8a-405 (2014);

c. Although Mr. Burge evaluated Ms. Tahy as Emerging or Minimally Effective for four years in a row, the District failed to provide her with resources or a recommended course of action designed to help her improve, in violation of Utah Code §53A-8a-407 (2012); and

d. The District extended Ms. Tahy's provisional status into her fourth year, without any explanation of the circumstances or performance issues that might justify the extension, in violation of Utah Code §53A-8a-201 (2012).

75.     As a result of the District's unlawful actions, Ms. Tahy has suffered damages in the form of lost wages and lost benefits.

76.     Ms. Tahy has also been damaged in her future employment benefits.

77.     Ms. Tahy is also entitled to recover her reasonable attorney's fees and costs incurred herein.

## SECOND CAUSE OF ACTION
### Breach of Contract

78.     Plaintiff reasserts and incorporates by reference all preceding paragraphs as if fully set forth herein.

79.     Under San Juan School District Policy 4114, the District has a "longstanding policy of preferring Native Americans in all District programs operated under Federal contracts . . . for the benefit of Native American students within the District." The Policy further states that the District shall give preference – in both employment and training – to Native Americans, "particularly Navajos who speak Navajo."

80.     The District breached this policy by failing to give Ms. Tahy a mentor and giving her inaccurate evaluations that inaccurately showed she was not performing her duties satisfactorily. Additionally, although Mr. Burge supposedly believed Ms. Tahy's performance was deficient, he failed to provide her with resources or a recommended course of action to help her improve, and thereafter terminated her supposedly based on her deficient performance.

81.     Ms. Tahy suffered damages arising out of and caused by the District's breach of this contract.

82.     As such, the District is liable to Ms. Tahy for all damages that flow from its breach and that are recoverable pursuant to Utah law.

### THIRD CAUSE OF ACTION
**Deprivation of Plaintiff's Property Interest without Due Process
in Violation of 42 U.S.C. §1983**

83.     Plaintiff reasserts and incorporates by reference all preceding paragraphs as if fully set forth herein.

16

84.     Because Ms. Tahy was a career status employee at the time of her termination, she had a property interest in her employment and a reasonable expectation that her employment would continue.

85.     The right to due process is explicitly provided under the District's policy and Utah law, and it is a clearly established constitutional right which a reasonable person, including the Defendant, would or should have known.

86.     The District provides due process for its employees: "career and provisional employees may be dismissed for cause during the course of employment only by means of due process. Due process shall be defined by District policy and applicable Utah state and federal statutes and regulations." *See* San Juan School District Employment – Classified Employment Rights 4161.1.

87.     Utah Code designates that teachers "have access to a process for fair examination and review of allegations made against them and for the administration of appropriate sanctions against those found, in accordance with due process, to have failed to conduct themselves in a manner commensurate with their authority and responsibility to provide appropriate professional services to the children of the state." *See* Utah Code §53A-6-102 (2013).

88.     Moreover, PEHRMA requires the District to provide procedures that include "procedures for dismissal of employees in an orderly manner without discrimination." *See* Utah Code §53A-8a-501 (2015).

89.     These procedures shall include "due process," "causes for dismissal," and "procedures and standards related to developing and implementing a plan of assistance for a career employee whose performance is unsatisfactory." *See id.*

90.     The procedures and standards for a plan of assistance include a) "specific, measurable, and actionable deficiencies; b) the available resources provided for improvement; and c) a course of action to improve employee performance." *See id.*

91.     Due process as interpreted under the United States Constitution requires pre-process and post-termination process, including a hearing and right to appeal termination.

92.     The District violated Ms. Tahy's right to due process of law under the United States Constitution by firing her and by denying her adequate pre- and post-termination process, including, but not limited to, a right to grieve her termination.

93.     Additionally, the District violated Ms. Tahy's due process rights by failing to provide her with a plan of assistance.

94.     At all times relevant hereto, the District acted under the color of law when committing the complained of acts.

95.     As a result of the District's conduct, Ms. Tahy has been injured and has suffered and will continue to suffer losses.

96.     Ms. Tahy is entitled to all available relief, including injunctive and prospective relief, back pay, reinstatement and/or front pay, and actual and compensatory damages, as well as costs and attorney's fees.

**FOURTH CAUSE OF ACTION**
**Racial Discrimination in Violation of Title VII and 42 U.S.C. §1981**

97.     Ms. Tahy reasserts and incorporates by reference all preceding paragraphs as if fully set forth herein.

98.     Ms. Tahy is a member of a protected class based on her race.

99.     As set forth above, during Ms. Tahy's employment, the District, through its agents, managers, supervisors, and employees, discriminated against her through the following illegal actions:

      a.   Stripping Ms. Tahy's duties for Native American Heritage week;

      b.   Arranging for white presenters at Native American Heritage week, instead of Native Americans presenters as Ms. Tahy planned;

      c.   Refusing to provide Ms. Tahy with funding for Native American school events, but using that money to purchase general school supplies;

      d.   Forcing Ms. Tahy to use her prep time to tutor non-Navajo students with reading, instead of letting her use that time to prepare for her own classes;

      e.   Refusing to allow Ms. Tahy to pull students out of classes for Native American presentations or concerts, while allowing the white music teacher to do so;

    f.   Subjecting only Ms. Tahy (and not the two white provisional teachers) to three in-class evaluations per week;

    g.   Not providing Ms. Tahy with a mentor;

    h.   Consistently giving Ms. Tahy poor evaluation scores;

    i.   Not providing Ms. Tahy with sufficient feedback, courses of action, and resources to improve her teaching; and

    j.   Terminating her employment.

100.   As set forth above, white employees in the District were not subject to the same type of restrictions, standards, and other adverse actions taken against Ms. Tahy by the District because of her race.

101.   Ms. Tahy reported this discrimination to District managers and supervisors on several occasions, but the District failed to take remedial action.

102.   Such actions constitute unlawful discrimination against Ms. Tahy with respect to the terms, conditions, privileges, and benefits of her employment.

103.   Ms. Tahy has suffered and will continue to suffer irreparable injury caused by the illegal conduct of the District. As a result of their unlawful conduct, Ms. Tahy has suffered damages in the form of lost wages, lost benefits, emotional distress, pain and suffering, inconvenience, mental anguish, and other nonpecuniary damages.

104.   For the aforementioned reasons, Ms. Tahy is entitled to compensatory damages against the District in an amount to be determined at trial.

105.    Ms. Tahy is also entitled to recover her reasonable attorney's fees and costs incurred herein.

## REQUEST FOR JURY TRIAL

Plaintiff requests that this matter be tried before a jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant,

a.    For Plaintiff's lost wages, compensation, and benefits;

b.    For compensatory damages;

c.    For general damages including emotional distress;

d.    For punitive damages;

e.    For Plaintiff's reasonable attorneys' fees, including expert witness fees as provided by 42 U.S.C. §1988 and 42 U.S.C. §2000e-5;

f.    For an offset to Plaintiff's increased tax burden;

g.    For pre-judgment and post-judgment interest at the highest lawful rate; and

h.    For costs of court and such other relief as the court deems just and equitable.

DATED this 8th day of January, 2019.

**STRINDBERG & SCHOLNICK, LLC**

/s/ Erik Strindberg
*Attorneys for Plaintiff*